**JEWEL MUSIC PUB. CO., Inc., v. LEO FEIST, Inc.**

District Court, S. D. New York.

July 30, 1945.

Leonard Zissu, of New York City, for plaintiff.

Julian T. Abeles, of New York City, for defendant.

CONGER, District Judge.

Suit for copyright infringement. Plaintiff complains that defendant by its musical composition "Drummer Boy" has infringed the copyright of plaintiff's musical composition "Carnival in Cotton Town." Defendant denies the infringement.

The words and music of "Carnival in Cotton Town" were written some time prior to December 30, 1936, by Jules Loman and Lou Ricca, who transferred all their right, title and interest in and to said song to the plaintiff who had the song copyrighted under the copyright laws of the United States on or about December 30, 1936.

From that date on plaintiff has been the sole proprietor of all rights, title and interest in and to the copyright in said musical composition.

Defendant's song was written and composed by Roger Edens at Los Angeles, California, in the early part of 1940.

At that time Roger Edens was in the employ of Metro-Goldwyn-Mayer Corporation as an arranger and composer. As originally written this song was to be and was included as a musical number of a picture put out by Metro-Goldwyn-Mayer entitled "Strike up the Band." The leads in this picture were Judy Garland (who sang the song) and Mickey Rooney (who did a drum specialty in connection therewith).

Subsequently and some time during the year 1940, defendant published and had the song "Drummer Boy", copyrighted and defendant is now the owner of said copyright.

Both by deposition and by testimony at the trial, Roger Edens denied that he ever knew the authors of plaintiff's song or that he had ever seen or heard the song, "Carnival in Cotton Town."

Both plaintiff and defendant are music publishers.

Both compositions are of the popular variety.

Plaintiff's song has a verse and a chorus. Defendant's song has only one verse or one chorus. Defendant insists that it has neither verse or chorus; plaintiff insists that it has a chorus only. It seems to me that it does not make any difference what it is called. It is at least the entire composition with which we are concerned. It is only the chorus of plaintiff's song which it is claimed was infringed. This chorus and defendant's composition follow the usual pattern for popular pieces of this type. It is of the A.A.B.A. structure. Each letter represents an eight bar part. The melodic theme as contained in the first A part is repeated in the other A parts. The B part is different and is interposed as a variation by way of contrast to the A parts. The chorus of plaintiff's song has 32 bars of which 24 are A parts and 8 bars of the B variety.

Defendant's composition has 36 bars, the first 32 of which follow the conventional A.A.B.A. structure with a coda (additional ending) of six bars.

Plaintiff's contention is that defendant's composition infringes both the words and music of the chorus of plaintiff's.

■ As far as the lyrics are concerned, I hold that there has been no infringement. There is nothing in the evidence to indicate that the writer of defendant's song copied the lyrics of "Carnival in Cotton Town" and used them in his song. There is not even sufficient similarity of words to create a suspicion. The real question centers around the music.

Plaintiff's contention is that the A parts of defendant's composition are the infringing parts. There is no claim that the B part of defendant's composition infringes or is even similar to the B part of plaintiff's chorus.

For the purpose of inquiring into the similarity of the pertinent parts of these two songs, it will only be necessary to compare the first A part, in as much as the other A parts are practically identical with the first A.

First, however, I should refer to the over-all similarity.

Both compositions are in the same key—C minor.

Both are written in the same tempo—4/4 fox trot.

There is a similarity in rhythm. When these compositions are played, the similarity is marked and quite apparent, even to one with no particular musical ability.

Briefly I will now compare the first A part of each composition.

### Melody

1st bar

The first two notes are not similar. The third and fourth are similar.

2nd bar

The four notes are identical.

3rd bar

Identical with first bar.

4th bar

Identical with second bar.

5th bar

Identical except for a slight difference in syncopation.

6th bar

The first note is different. The second two notes are the same. The last beat and a half is different.

7th and 8th bars

The melodies in both songs return again to C minor, the first notes in both seventh bars and the last of both eighth bars being the same.

As to the actual identity of the first A part (repeated in the others), there is an identity of melodic notes in the 2nd, 4th and 5th bars; the 4th bar being a repetition of the 2nd bar and the 5th contains one note repeated.

### Harmony

The harmonic structure in both songs is basically the same. It is a rather common harmony structure. Nothing unusual about it. It is nothing more than one would expect, in as much as the harmony follows the melody.

As I look at the over-all picture, the similarities and identities in the component parts which go to make up the music of a song, and the effect of similarity when the two pieces are played, I have arrived at the conclusion expressed by one of plaintiff's experts (Greenfield): "There is enough similarity throughout to warrant questioning."

With this in mind I have examined the issue of access. This is always most important in these cases. Similarity, even a striking similarity, may be arrived at honestly. It is extremely difficult for one to say that similarity alone spells piracy or theft. This is very well illustrated in Haas v. Leo Feist, Inc., et al., D.C., 234 F. 105, 107. In that case the court decided that there was infringement proved because of (1) a parallelism between the two songs, which to the ear of the judge, passed the bounds of mere accident, (2) a real and actually proven opportunity for access.

Judge Hand in writing the opinion stated:

"It is said that such similarities are of constant occurrence in music, and that little inference is permissible."

He then proceeded to state that perhaps he should not take them (the similarities) as enough except for the opportunity proved, the habits of the writer of the infringing song shown in other instances, and the serious question of his credibility.

Plaintiff's song was published in December, 1936. 4,000 professional copies were printed and were distributed to various broadcasting stations, artists, etc.

6,000 copies were printed for sale of which 5,626 were sold.

1,000 orchestrations were printed and 168 sold. 198 band arrangements were sold through a third party.

Plaintiff's song was written to be used in connection with the Cotton Carnival held at Memphis in December, 1938. The testimony is a bit hazy as to just what publicity the song got in connection with that event. There is testimony that the song was put out too late to associate with the Cotton Carnival in 1938, and that the phonograph companies refused to record it.

The song was used on a number of occasions in broadcast performances of the Columbia Broadcasting system and the National Broadcasting Company. Most of this was in 1938. In most instances these broadcasts were country wide. There were electrical transcriptions made for General Motors (Chevrolet) and Coca Cola and these were used in broadcasts on some occasions.

In addition one may conclude from the evidence that shortly after its publication, a copy of plaintiff's song was sent to the music department head of the motion picture studio, in whose employ the writer of defendant's song was, and to whose musical library he resorted frequently in arranging and adapting music for pictures.

This is a general picture of the activity of plaintiff's song. After all it was not a success. Certainly it was not a financial success. Practically all of the pianaforte copies were sold in 1938. In 1939 there were only 11 copies sold.

After 1938 there was no real demand for the song. The president of plaintiff corporation testified that they started to "work" the song in 1938 a little but after that they made no effort to do so.

■ The burden of proof on this issue of access is upon the plaintiff. I feel that the plaintiff has not met this burden. The proof of actual access falls far short of that which I believe is required. The writer of defendant's song has testified that he has no recollection of ever having heard plaintiff's song and that he never saw it prior to composing "Drummer Boy". There is nothing in plaintiff's evidence to convincingly indicate otherwise. As I said in Allen v. Walt Disney Productions, D.C., 41 F.Supp. 134, 136, to so find "I would again have to indulge in speculation, conjecture and suspicion." Of course, having so found against plaintiff on this question of access, that does not end the matter.

■ Access may be inferred. For a discussion of this point, see Allen v. Walt Disney Productions, supra. After all this brings us back to the fundamental issue of this case. Is the similarity of the two so great and so convincing that one may say that piracy exists and is found? If the answer is in the affirmative, then of course it necessarily follows that access may be inferred.

We have a situation here which does not merit the conclusion reached by Judge Hand in Fred Fisher, Inc., v. Dillingham, D.C., 298 F. 145, 147. There we find the composition "Dardanella," a most popular number. The infringing song was written by one "who had necessarily known it,

as a musician knew it." Further the similarity between the two pieces was in the accompaniment of the chorus or refrain of the infringing song which had in part an absolute identity with the accompaniment of the verse though not the chorus of "Dardanella." The court stated:

"* * * Not only is the figure in each piece exactly alike, but it is used in the same way * * *. Further, the defendants have been able to discover in earlier popular music neither this figure, nor even any 'ostinato' accompaniment whatever."

In that case there was no proof of actual access, but it was inferred by reason of the facts which I have set forth above.

The relationship of the two songs here are not in any way comparable with the two songs in the Dardanella case. Plaintiff's song never had any real vogue. There is no reason to infer that the writer of defendant's song ever heard "Carnival in Cotton Town." There is nothing unique about plaintiff's song. There is nothing unusual or out of the ordinary in plaintiff's composition. As a matter of fact there is no particular musical skill displayed in either of these compositions. It seems to me that the two songs here involved are in the category of the two songs involved in Darrell v. Joe Morris Music Co., 2 Cir., 113 F. 2d 80.

I quote from that case for the reason that it is most pertinent because of similarity of facts and because the conclusion reached and the reasons therefor coincide with my views here:

"The strength of the plaintiff's case lies in the substantial identity of a sequence of eight notes in his song and theirs; and indeed, that hardly does justice to the similarity between the two, because the sequence reappears in each song so frequently as to constitute the greater part of each. This makes the two, when rendered, so much alike to the ear, that the supposed piracy appears almost inevitable. Nevertheless, we are not convinced that that conclusion is inescapable. The showing of access was not very persuasive. * * * We have already said in Arnstein v. [Edward B.] Marks Music Corporation, 2 Cir., 82 F.2d 275, that such simple, trite themes as these are likely to recur spontaneously. * * * It must be remembered that, while there are an enormous number of possible permutations of the musical notes of the scale, only a few are pleasing; and much fewer still suit the infantile demands of the popular ear. Recurrence is not therefore an inevitable badge of plagarism."

The above question expresses in better language than I have at my command, just how I feel about the two songs before me. See also Arnstein v. Edward Marks Music Corporation, 2 Cir., 82 F.2d 275, quoted above.

■ Similarity or identity must create more than a suspicion of piracy. They must establish piracy with reasonable certainty. The evidence here of similarity and identity has not so convinced me.

Each of these compositions has its own personality. Plaintiff's composition is of the swing type. The words and music are indicative of a happy carnival spirit.

Defendant's song is really a drum specialty. Roger Edens has testified that he was instructed to prepare a composition for Mickey Rooney, so that he could use his drum specialty. The composition of the piece so indicated. In the melodic line 22 bars are a repetition of the same note, to indicate the beat of a drum and the piece is to be played "with steady tempo."

I am unable to arrive at a definite conclusion as to the source of defendant's composition. On the examination before trial, Edens testified that it was hard to state from what source he got his inspiration. He rather intimated it might be from a negro jubilee song.

On the trial, however, he stated his composition was patterned after an old Indian ceremonial dance "Hako."

I was not too favorably impressed by this latter explanation of the source of defendant's song. At any rate it is not material to definitely find just where Edens got his inspiration, as long as it was not from plaintiff's piece. All that one might say is that defendant's composition is written in the minor mode and resembles in character and rhythm a number of the negro jubilee and spiritual type of songs that were played before me during the trial.

I was very much impressed with the similarity between the two songs here involved and an old, and at one time very popular song "Lulu's Back in Town."

Testimony on the part of defendant tended to show that certain parts of this composition were substantially similar to the basic part of plaintiff's composition. When played before me in court the similarity between all three songs was marked

and apparent. I mention this not for the purpose of suggesting that this song "Lulu's Back in Town" might have been the source of either plaintiff's or defendant's song, but to indicate how similarity in songs of this type may easily and innocently be arrived at.

Defendant is entitled to a judgment dismissing the complaint and for judgment in its favor to be settled on notice.