Homer C. CHOLVIN and Norman E. Stade, Plaintiffs-Appellees.

v.

B. & F. MUSIC CO., Inc., and Mercury Record Corporation, Defendants-Appellants.

No. 12043.

United States Court of Appeals Seventh Circuit.

March 6, 1958.

William R. Buge and Charles F. Hough, Chicago, Ill., for appellants.

Morton Schaeffer and Libby Schaeffer, Chicago, Ill., for appellees.

Before DUFFY, Chief Judge, and SCHNACKENBERG and HASTINGS, Circuit Judges.

DUFFY, Chief Judge.

Plaintiffs are the owners of a copyright in the musical composition "When The Sun Bids The Sky Goodnight." The complaint alleges that defendants infringed this copyright by the musical composition "While We Dream." The District Court found the issues in favor of plaintiffs and ordered defendants to deliver to plaintiffs all infringing material and to pay damages, costs and attorney fees.

Plaintiff Cholvin was musically educated. He taught piano and for some twelve years was a member of an orchestra. In 1940 he organized his own orchestra. As early as 1936 he began composing a melody entitled "When The Sun Bids The Sky Goodnight." Plaintiff Stade wrote the words to the musical composition. In February, 1941, plaintiff Cholvin secured an unpublished copyright on the song "When The Sun Bids The Sky Goodnight" which was registered as Class E unp. No. 247997. Having changed one note in the composition, plaintiff, in November, 1942, secured an unpublished copyright on the song which was classified as E unp. No. 314751.

Defendant Kaczmarek resided at Cicero, Illinois. In the summer of 1949 or 1950 he claims to have composed the music to the melody now entitled "While We Dream." The original lyric was written in 1951 by George Carl Zentz under the title "When You Walk With The One You Love." This was changed in 1953 to "While We Dream."

In 1953, defendant B. & F. Music Co., Inc., acquired the rights to the musical composition "While We Dream," and registered its claim in the Copyright Office during the same year. Also, in 1953, defendant Mercury Record Corporation produced and distributed a phonograph record of the musical composition "While We Dream."

■ The trial court found that defendants did copy the plaintiffs' musical composition. There was no direct evidence that defendant Kaczmarek had access to plaintiffs' song, but the charge of infringing does not fail merely because the infringer was not caught in the act for access may be inferred or found circumstantially. Wilkie v. Santly Bros., Inc., 2 Cir., 91 F.2d 978, 979.

In Arnstein v. Porter, 2 Cir., 154 F.2d 464, at page 468, the court said: " * * Of course, if there are no similarities, no amount of evidence of access will suffice to prove copying. If there is evidence of access and similarities exist, then the trier of the facts must determine whether the similarities are sufficient to prove copying. On this issue, analysis ('dissection') is relevant, and the testimony of experts may be received to aid the trier of facts. * * * "

■ There is much similarity between the musical composition "When The Sun Bids The Sky Goodnight" and "While We Dream." Plaintiffs' expert testified that fifty percent of defendants' composition was exactly like plaintiffs'. Defendants' expert testified that the works were alike a shade less than fifty percent. In the opinion of plaintiffs' expert, it would be impossible for two musical compositions to be so much alike without one having been copied from the other.

Plaintiffs had printed about two thousand professional copies of sheet music of their song. These were distributed to musicians, professional singers, orchestras and radio stations. It is not likely that defendant Kaczmarek had access to plaintiffs' composition from the sheet music. He had no musical education or training, and he would have to depend almost entirely upon his power of hearing to know about songs or musical compositions which had been composed prior to his work upon "While We Dream."

Plaintiffs proved that four recordings were made of "When The Sun Bids The Sky Goodnight," as follows: Tower Record by George Winslow and His Orchestra; Broadcast Recording No. 477 by Bonnie Campbell on the Organ; Broadcast Recording No. 216 by George Winslow and His Orchestra, and Broadcast Recording No. 300 by George Winslow and His Instigators. It was testified that more than 200,000 records were sold. In addition, George Winslow and His Orchestra used plaintiffs' composition 'as his theme song, and he made radio broadcasts using this song from the Aragon and Trianon Ballrooms in Chicago. His music including plaintiffs' song was also broadcast from Melody Mill, O'Henry Ballroom and Martinique Restaurant, all in the Chicago area. For a considerable period of time Winslow's broadcasts were heard both locally and by coast-to-coast

**104**

network. During the period of five or six years when plaintiffs' song was at the height of its popularity, and was broadcast frequently, defendant Kaczmarek was a resident of the Chicago area and often listened to radio broadcasts. All of this was prior to the time when Kaczmarek started to write the words of his song "While We Dream."

 We hold that the evidence and the inferences which the trial court was reasonably warranted in drawing from the same, constitutes substantial support for the findings herein. Surely, the findings are not clearly erroneous. The issues of copying and improper appropriation were issues of fact. We cannot disturb the findings thereon. Plaintiffs are entitled to have the judgment below affirmed unless the court committed reversible error in limiting cross examination as to income, royalties and fees which the plaintiffs received from their musical composition.

Defendants now urge they should have been permitted wide latitude in cross-examining plaintiffs as to their royalties and fees because this information would test the veracity of plaintiffs' claim of wide-spread distribution of their musical composition. However, at the trial, when the objections were first made, no such reason was offered.

At the time of the first objection, defendants' counsel said: " * * * we have got to find out what was the value of that which we infringed." Shortly thereafter he stated: " * * * if we infringed, the question of the value of what we infringed must also be considered." Again counsel made explanation of his objections: " * * * it would not make any difference as to the infringement; it would as to the damage." The court then explained to counsel that it would proceed with the trial on the question of infringement and that all questions pertaining to damages would be considered later. It is true that somewhat later defendants' counsel did advance as an additional reason for this line of cross-examination that the availability to the alleged infringer was also an element.

The trial court did not completely bar all questions as to income from the song. It was brought out that plaintiffs did have a contract with Broadcasting Music, Inc. by which they licensed the use of their composition for public performance on radio stations affiliated with Broadcast Music, Inc., and that plaintiffs waived any payment of fees. It also appeared that there were no records in plaintiffs' possession which were immediately available as such records as had been kept were by a company which, at the time of the trial, was located in California. It is quite evident from a reading of the testimony that very little additional information on the point could have been obtained from the plaintiffs.

Under the circumstances of this case, we do not think that such restriction on cross-examination as may have been imposed, was prejudicial.

Judgment affirmed.