[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-14710

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 8, 2012
JOHN LEY
CLERK

D.C. Docket No. 1:08-cv-03386-TWT

CHARLES WATT, d.b.a. Silverhawk Records,
d.b.a. Bend Of The River Publishing,

                              Plaintiff - Counter Defendant-
                              Appellant,

versus

DENNIS BUTLER, f.k.a. Mook B,
LEFABIAN WILLIAMS, f.k.a. Fabo,
CARLOS WALKER, f.k.a. Shawty Lo,
ADRIAN PARKS, Individually and f.k.a. Stoner,
a.k.a. Stuntman,
d.b.a. D4L,
TERIYAKIE NOCODEAN SMITH, et al.,

                              Defendants - Counter Claimants-
                              Appellees,

ARTIST PUBLISHING GROUP, et al.,

                              Defendants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(February 8, 2012)

Before TJOFLAT and CARNES, Circuit Judges, and MICKLE,* District Judge.

MICKLE, District Judge:

This is a copyright infringement case involving a repeating three-note riff, or ostinato, used in the 2004 rap song, "Betcha Can't Do it Like Me" ("Betcha") by the rap group D4L. Appellant Charles Watt claims that the riff was copied from the group Woodlawn Click's 1995 rap song, "Come Up." Watt owns the copyright to "Come Up" and he sued D4L along with others associated with "Betcha," including Teriyakie Smith, who claims to have composed the music for "Betcha" in 2004 using three adjacent keys on his laptop keyboard and the "Fruity Loops" music production software.

The district court found that Watt presented sufficient evidence to create a jury issue regarding (1) D4L's access to "Come Up," and (2) substantial similarity between the riffs used in D4L's "Betcha" and Woodlawn Click's "Come Up." The

_____

* Honorable Stephan P. Mickle, United States District Judge for the Northern District of Florida, sitting by designation

2

district court found, however, that Watt failed to rebut Teriyakie Smith's testimony that he independently created the riff, and granted summary judgment in D4L's favor.

We review the district court's ruling de novo, applying the same summary judgment standard. Calhoun v. Lillenas Publ'g, 298 F.3d 1228, 1232 (11th Cir. 2002). We examine the facts and the reasonable inferences drawn therefrom in the light most favorable to the nonmoving party to determine whether there is any genuine dispute of material fact for a jury to decide. Id. "We may affirm the district court on different grounds as long as 'the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted or rejected by the district court.'" Id. at 1230 n.2 (quoting Ochran v. United States, 273 F.3d 1315, 1318 (11th Cir. 2001)). Because the evidence was not sufficient for Watt to sustain a genuine dispute that "Betcha" was copied from "Come Up," we affirm.

## I.

The gravamen of a copyright infringement suit is copying. The plaintiff must show that the defendant copied elements of an original work that is protected by the plaintiff's valid copyright. Id. at 1232. Direct evidence of copying is rarely available, so the law provides a method of proving copying indirectly, which creates a presumption of copying that may be negated with evidence of

independent creation.  Id.; Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1249 (11th Cir. 1999).

A plaintiff can establish prima facie evidence of copying by showing (1) that the defendant had access to the plaintiff's work; that is, a reasonable opportunity to come across the work, and (2) that there is a substantial similarity between plaintiff's and defendant's work; that is, an average lay observer would recognize defendant's work as having been taken from plaintiff's work.  Calhoun, 298 F.3d at 1232, 1234 n.11.  If the plaintiff is able to make the showing, then a presumption of copying arises and the burden of production shifts to the defendant.  Id. at 1232; see also Keeler Brass Co. v. Cont'l Brass Co., 862 F.2d 1063, 1066-67 (4th Cir. 1988) (discussing presumptions and burdens in copyright cases).  A defendant can negate the presumption of copying by presenting evidence that he independently created the work.  Calhoun, 298 F.3d at 1232.  Once the defendant does so, the presumption is negated and the plaintiff has the burden of proving that the defendant in fact copied his work.  Id.

In this case, both sides take issue with the district court's summary judgment ruling.  The appellees (collectively "D4L") argue that Watt did not present a prima facie case of copying because Watt's evidence of access and substantial similarity was insufficient to sustain a genuine dispute.  Watt, on the

4

other hand, argues that D4L's evidence of independent creation was self-serving and not sufficient to rebut the presumption of copying that arose from its prima facie case. We find that Watt's evidence of access was too speculative and conjectural to make out a prima facie case. Furthermore, summary judgment was appropriately granted against Watt because he could not sustain a genuine dispute regarding copying.

## II.

It is common in the rap industry for budding artists to distribute their music by selling or giving away copies on the street. Watt claimed that between 1996 and 2005, he and others sold or gave away 12,000 to 15,000 compact discs featuring Woodlawn Click's "Come Up" throughout the Southeast United States, including the Atlanta area where members of D4L and Teriyakie Smith are from. "Come Up" was never commercially distributed.

During the 1995-1999 time period, Woodlawn Click performed "Come Up" at least 50 times in venues in the Atlanta area, including popular nightclubs, music festivals, and the Jack the Rapper Convention. A music video for "Come Up" was broadcast on the television shows "Front Row Video" and "Comic Escape" in the Atlanta area. A 41-second portion of "Come Up" was included in the film "Dirty South," which was never commercially released but premiered to an audience of

5

several hundred in Atlanta.  Also, the soundtrack album for the film included "Come Up," although it had virtually no sales.

The members of D4L and Teriyakie Smith denied that they ever heard "Come Up" or of the group Woodlawn Click.  They never saw the television programs where "Come Up" might have played.  They did not see the movie "Dirty South" or hear its soundtrack.  Furthermore, Teriyakie Smith was born in 1985.  During the 1995-1999 time period, he was only 10 to 14 years old.  He was too young to go to clubs where "Come Up" may have been performed.

To establish access, a plaintiff must have more than mere speculation and conjecture.  Herzog, 193 F.3d at 1250.  There must be a reasonable possibility that the defendant came across the plaintiff's work.  Id.  Here, the chance that members of D4L or Teriyakie Smith came across "Come Up" from a street copy is exceedingly slim considering the population of the Southeastern United States, where Watt says the song was handed out, compared to the number of copies handed out during the nine year period between 1996 and 2005.  The same can be said for the performances of "Come Up" in the Atlanta area considering all the other rap music performances taking place during the 1995-1999 time period compared to the limited number of engagements that Woodlawn Click had.

Watt's evidence of access depends largely on the assumption that members

6

of the Atlanta rap community share music among themselves and that the song "Come Up" became popular and was widely shared for many years so as to multiply its distribution. Otherwise, it would hardly be possible for members of D4L, or Teriyakie Smith in particular, to have had access to "Come Up." This assumption is too conjectural and speculative to sustain a genuine dispute. There is no evidence that "Come Up" ever caught on in popularity. To the contrary, neither the song "Come Up" nor the group Woodlawn Click became a commercial success.

### III.

On the issue of substantial similarity, Watt was required to show that an average lay observer would recognize "Betcha" as having been taken from "Come Up." Calhoun, 298 F.3d at 1232 (11th Cir. 2002). The two songs are both in the rap genre. Yet, they do not sound alike upon casual listening. It is only when one focuses on the riff that a similar repeating pattern can be heard underlying both songs.

A riff can constitute a copyrightable element if it is original and important to the overall impression of the work.[1] D4L does not argue that the riff from

---

[1] See Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 575, 588-89, 114 S.Ct. 1164, 1169, 1176 (1994) (acknowledging that the opening bass riff and first words of Ray Orbison's "Pretty Woman" could be characteristic features that go to the heart of the

"Come Up" is uncopyrightable. Instead they focus on other differences between the songs to argue that the songs are not substantially similar. It is only the riff, however, that Watt contends D4L copied.

Watt's expert prepared a chart showing a visual comparison of the riffs using cipher notation.

Come Up    |321--32|1---*3-2*-|321---32|1--*1345*-|

Betcha     |321--32|1--------|321---32|1---------|

The notation shows some transition notes marked in italicized print in "Come Up" that are not included in "Betcha." (Font altered from shaded to italicized). The main notes and the rests between them, marked with dashes, are the same. Watt's expert concluded that other than the lack of the transitional notes, the pattern is identical. Listening to the two songs confirms this. An average lay observer would likely recognize the riffs as being the same.

As for differences in the use of the riff, the riff in "Betcha" is prominent. In fact, there is little else to the song aside from the riff and the vocals. A listener can easily identify the riff, which is repeated throughout the song. Likewise in "Come

work and 2 Live Crew's use of these features would constitute a violation of the copyright act if not for fair use parody); Fred Fisher, Inc. v. Dillingham, 298 F.145, 147 (D.C.N.Y. 1924) (Learned Hand, J.) ("[P]largarism of any substantial component part, either in melody or accompaniment, would be the proper subject of such a [copyright] suit as this.").

8

Up" a listener can hear the riff prominently at the beginning of the song. The riff falls into the background when the vocals and another melody are added, making it difficult to hear at times. The riff, though, is arguably a substantial component of "Come Up" that is repeated throughout the song.

The district court concluded that Watt could show that "Come Up" and "Betcha" were substantially similar because the riff, which is a copyrightable element, is the same in both songs. We agree. The main portion of the riff, which is a copyrightable feature, sounds the same in both songs and is repeated throughout both songs.

### III.

The evidence of independent creation comes from Teriyakie Smith's testimony that he wrote the music for "Betcha," and specifically the riff, in 2004 using three adjacent keys on his laptop keyboard and the "Fruity Loops" music production software. The district court accepted this testimony and found that it rebutted the presumption of copying that arose from Watt's prima facie case.[2]

---

[2] Watt argues that the district court treated the evidence of independent creation as an affirmative defense. He is not correct. Negation of a presumption is different from an affirmative defense. See Calhoun, 298 F.3d at 1230 n.3 ("It should be emphasized that independent creation is *not* an affirmative defense (i.e. a claim extraneous to the plaintiff's *prima facie* case). Rather, independent creation attempts to prove the opposite of the Calhoun's primary claim, i.e., copying by McGee. Keeler Brass Co. v. Cont'l Brass Co., 862 F.2d 1063, 1066 (4th Cir. 1988)").

Proof of access and substantial similarity give rise to a presumption of copying that is fully negated when uncontradicted testimony of independent creation is produced. Calhoun, 298 F.3d at 1233. The testimony of Teriyakie Smith, though not corroborated by documentary evidence or by a disinterested third-party, was plausible. We agree with the district court's determination that the evidence met the burden of production. As a result, even if Watt had made out a prima facie case based on a showing of access and substantial similarity, the evidence of independent creation would have negated the presumption of copying that arose from Watt's prima facie case.

## IV.

As we have already mentioned, Watt failed to create a genuine issue of fact about access. Watt also argued, however, that "Betcha" and "Come Up" are strikingly similar. Striking similarity evidence is generally considered to be a substitute for access. Herzog, 193 F.3d at 1248. The district court considered Watt's argument about striking similarity and found that it did not rebut the defendants' uncontradicted evidence of independent creation.

When a plaintiff in a copyright action cannot demonstrate access, "he may, nonetheless, establish copying by demonstrating that his original work and the putative infringing work are strikingly similar." Corwin v. Walt Disney, 475 F.3d

1239, 1253 (11th Cir. 2007). Strikingly similar means that "the proof of similarity in appearance is 'so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded.'" Id. (quoting Selle v. Gibb, 741 F.2d 896, 901 (7th Cir. 1984)).

The district court reviewed Watt's evidence of striking similarity not as a substitute for evidence of access, which it found Watt had established, but as a rebuttal to Teriyakie Smith's testimony of independent creation and in determining whether Watt could meet his ultimate burden of persuasion. Whichever way the evidence is treated, Watt cannot show striking similarity.

A plaintiff claiming striking similarity must present evidence that the similarities between the two works are unique or complex. Selle v. Gibb, 741 F.2d 896, 904 (7th Cir. 1984). This requirement is "particularly important with respect to popular music, 'in which all songs are relatively short and tend to build on or repeat a basic theme.'" Benson v. Coca-Cola Co., 795 F.2d 973, 975 n.2 (11th Cir. 1986) (quoting Selle, 741 F.2d at 905).

In this case, the riff is not so complex or unique so as to preclude the possibility of independent creation, despite Watt's expert's conclusion. Indeed, the simplicity of the riff is what makes Teriyakie Smith's testimony of independent creation plausible.

# V.

In conclusion, we find that the district court did not err when it granted summary judgment against Watt on his copyright claim. Watt did not create a genuine issue of material fact about access. Watt did not contradict Teriyakie Smith's testimony of independent creation. Overall, Watt was unable to sustain a genuine issue of copying.

**AFFIRMED.**