**Ray REPP and K & R Music, Inc., Plaintiffs,**

v.

**Andrew LLOYD WEBBER, the Really Useful Group, PLC, the Really Useful Company, Inc., MCA Records, Inc., Hal Leonard Publishing Corporation and Polygram Records, Inc., Defendants.**

No. 91 Civ. 0906 (SWK).

United States District Court, S.D. New York.

Aug. 3, 1994.

Cherry & Flynn by William R. Coulson, Chicago, IL, Chadbourne & Parke by Stanley S. Arkin, New York City, for plaintiffs.

Gold, Farrell & Marks by Jane G. Stevens, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

In this copyright infringement action, plaintiffs allege that a musical composition authored by Andrew Lloyd Webber ("Lloyd Webber") entitled "The Phantom of the Opera" (the "Phantom Song") infringes plaintiff Ray Repp's ("Repp") song "Till You." Presently before the Court is defendants' motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the defendants' motion is granted.

## BACKGROUND [1]

### I. The "Till You" Song

Plaintiff Repp is a professional musician primarily engaged in composing, publishing, recording and performing popular liturgical music. He has published 11 albums of music, encompassing 120 different musical compositions, and has performed his music in the United States, Europe and Asia.

In September 1978, Repp recorded a working tape of a folk song entitled "Till You," basing the lyrics on certain Biblical verses from the Book of Luke. "Till You" was copyrighted in July 1978. That year, Our Sunday Visitor, Inc. ("OSV"), a Catholic publisher, released Repp's recording of the album *Benedicamus*, including the song "Till You." The *Benedicamus* recording was advertised in OSV's weekly newspaper, which was handed out after services in United States Catholic churches across the United States. The *Benedicamus* album also was released in 1978 at three religious conventions: (1) the Los Angeles Religious Education Congress, attended by approximately 20,000·people; (2) the National Catholic Educators' Convention in St. Louis, attended by more than 20,000 people; and (3) the National Pastor Musicians' Convention in Scranton, Pennsylvania, attended by more than 2,000 people.

In the summer of 1978, Repp started the company K & R Music, Inc. ("K & R"), which re-released the *Benedicamus* album in December 1978. Repp alleges that he personally ordered the manufacture of 5,000 copies of the *Benedicamus* album and more than 8,000 cassette tapes of the *Benedicamus* recording. According to Repp, only a handful of these albums remain, and all of the cassette tapes were either sold or distributed as promotional or airplay copies.[2] Two of Repp's former employees also testified at their depositions that Repp sold "thousands" of *Benedicamus* recordings in the late 1970s and early 1980s. In addition, 100 copies of the sound recording were shipped to an Australian distributor in 1981.

The sheet music of "Till You" has been sold in four books—two renditions entitled *Benedicamus*, and two versions entitled *Life Songs*. Repp alleges that he personally ordered a total of 13,000 copies of *Life Songs*

1. The following facts are taken from the complaint, the parties' Rule 3(g) Statements, the Declaration of Andrew Lloyd Webber in Support of Summary Judgment, executed on June 17, 1993 (the "Webber Dec."), the Declaration of Sarah Brightman In Support of Summary Judgment, executed on June 17, 1993 and the Declaration of Ray Repp in Response to Defendants' Motion for Summary Judgment, executed on September 14, 1993 (the "Repp Dec.").

2. Repp has no documentary evidence of the number of copies of the *Benedicamus* recording actually sold to the public during the late 1970s and early 1980s, however, as he contends that, in 1988, he discarded all financial documents dated prior to 1985.

and 12,000 copies of *Benedicamus.* According to Repp, with the exception of a few dozen copies of one version of *Life Songs* and one version of *Benedicamus,* all copies have been sold or distributed as promotional or review copies.

Repp alleges further that he has performed "Till You" at over 200 concerts before at least 100,000 people throughout the United States, Canada, Japan and Korea, at convention centers, churches, universities and theaters. In addition, he alleges that the album *Benedicamus* has been frequently broadcast on the radio, making the "heavy play list" compiled by Fordham University's campus radio station in New York. In total, Repp alleges that the distribution and exploitation of "Till You" has produced at least $250,000 in revenues.

In order to advertise Repp's music, K & R distributed a tabloid newspaper to more than 300,000 people between 1978 and 1985, including public libraries. K & R also sent out mailings to retail stores and sold Repp's music directly to these stores. According to Repp, many of these stores also sell Lloyd Webber's music and recordings. Additionally, in 1979, Robert Velline ("Velline"), otherwise known as Bobby Vee, a mutual friend of Repp and Lloyd Webber's brother, Julian Lloyd Webber, was given a handmade cassette of some of Repp's works.[3]

## II. The Phantom Song

Defendant Lloyd Webber, a British citizen who maintains a residence in New York City, is the composer of numerous dramatico-musical works, including *Joseph and the Amazing Technicolor Dreamcoat, Jesus Christ Superstar, Cats, Evita, Starlight Express, Song and Dance, Aspects of Love, Sunset Boulevard* and *The Phantom of the Opera.* Lloyd Webber has also composed liturgical music, including musical works entitled "Requiem," "Ubi Caritas et Amor Deus," and "Benedicite."[4] From 1969 to 1975, Lloyd Webber composed and copyrighted, *inter alia,* two songs entitled "Benjamin Calypso" and "Close Every Door," composed for the musical *Joseph and the Amazing Technicolor Dreamcoat,* and two songs entitled "Pilate's Dream" and "Heaven on Their Minds," composed for the musical *Jesus Christ Superstar.*

In late 1983, Lloyd Webber created the Phantom Song at his home in Sydmonton, England. According to Lloyd Webber, the Phantom Song was conceived to showcase the vocal talents of Sarah Brightman ("Brightman"), an actress and singer.[5] Brightman worked with Lloyd Webber in composing the song, singing notes and musical phrases to assist Lloyd Webber in arriving at the Phantom melody. In February or March 1984, Lloyd Webber provided a tape containing unpublished works in progress, including the melody for the Phantom Song, to Trevor Nunn, an English director.

In the summer of 1984, Lloyd Webber viewed Ken Hill's ("Hill") production, *The Phantom of the Opera,* a musical farce incorporating arias from mainstream operatic works. After attending the production, Lloyd Webber entered into discussions with

---

**3.** Velline testified at his deposition that he did not meet Julian Lloyd Webber until October 1985, and met Andrew Lloyd Webber on one occasion a year after *The Phantom of the Opera* premiered in London. *See* Deposition of Robert Velline, taken on November 4, 1992 ("Velline Dep."), annexed to the Reply Affidavit of Jane G. Stevens, sworn to on November 4, 1993, as Exh. "H," at 55, 65. Plaintiffs dispute this date, pointing to deposition testimony that Velline met the Lloyd Webbers in the early 1980s. *See* Velline Dep., annexed to Plaintiffs' Exhibits to Their Response to Defendants' Motion for Summary Judgment ("Plaintiffs' Exhibits") as "P26," at 159–160. In any event, Velline does not recall whether the handmade cassette tape of Repp's music contained the "Till You" song. Velline also indicated that he had never discussed Repp's music with either of the Lloyd Webbers, or given either of them a copy of Repp's music. *Id.* at 68–69.

**4.** Lloyd Webber testified at his deposition that he "is very fond of church music," and "had an opportunity to listen to a great amount of church music ... around the time of [his] composition of a requiem." *See* Deposition of Andrew Lloyd Webber, taken on November 9, 1992 (the "Webber Dep."), annexed to Plaintiffs' Exhibits as Exh. "P24," at 67–68, 259. Lloyd Webber's father also was a composer of liturgical music.

**5.** Both Lloyd Webber and Brightman allege that they had never heard of Repp or his music prior to this litigation.

Hill about producing the show for small theatres.

Lloyd Webber considered incorporating the Phantom melody into the Hill project. Accordingly, in late September 1984, Lloyd Webber delivered a tape containing the principal melody of the Phantom song to Michael Batt ("Batt"), an English lyricist. In October 1984, Brightman and Batt made a demonstration recording of the Phantom Song at Air Studios in London. That version of the song was never released, however, and Lloyd Webber decided not to become involved with the Hill production.

In July 1985, Lloyd Webber premiered an abbreviated first act of a musical play based on the book *The Phantom of the Opera*, during which the Phantom Song was performed, at a private musical festival at his Sydmonton residence. In August 1985, while vacationing in Australia with Brightman, Lloyd Webber created an outline for the second act of the musical play.

Brightman recorded the Phantom Song with Steve Harley in December 1985, a single of which was released in January 1986. The ultimate production of *The Phantom of the Opera* premiered in London in 1986, and in New York in 1988. The Phantom Song was registered with the United States Copyright Office in 1987.

## III. The Complaint

In July 1990, plaintiffs commenced this action in the United States District Court for the Northern District of Illinois for copyright infringement under federal law (Count One) and unfair competition and deceptive trade practices under Ill.Rev.Stats. ch. 121½, ¶¶ 261–272, and 311–317 (Count Two).[6] Specifically, plaintiffs allege that Lloyd Webber copied Repp's "Till You" song in its Phantom melody. The various corporate defendants are alleged to have distributed and exploited the Phantom Song.

6. The action was transferred to this Court in April 1991.

7. The three primary musical elements of a composition consist of melody, harmony and rhythm, which flow through spans of time, called "mea-

In October 1991, the defendants amended their answers, interposing counterclaims against the plaintiffs alleging, *inter alia,* that Repp's "Till You" song infringes Lloyd Webber's copyright in "Close Every Door." By Order dated October 30, 1991, the Court bifurcated the action, ordering that all issues of liability be tried separately from issues of damages.

The defendants now move for summary judgment, pursuant to Federal Rule of Civil Procedure 56. According to the defendants, the complaint must fail as a matter of law, as the plaintiffs cannot rebut the defendants' evidence that Lloyd Webber independently created the Phantom Song.

## IV. Expert Witness Analyses

### A. Professor Ferrara's Report

In support of their motion for summary judgment, the defendants have submitted two affidavits of Lawrence Ferrara, professor of music at New York University, who concludes that the Phantom Song is directly traceable to prior Lloyd Webber works and existing public domain musical compositions. *See* the Affidavit of Lawrence Ferrara In Support of Defendants' Motion for Summary Judgment, sworn to on June 17, 1993 ("Ferrara Aff."), and the Reply Affidavit of Lawrence Ferrara, sworn to on November 2, 1993 ("Ferrara Supp.Aff."). According to the defendants, this evidence demonstrates that Lloyd Webber independently created the Phantom Song.

#### 1. Musical Similarities Between the Phantom Song and Prior Lloyd Webber Songs

First, Prof. Ferrara contends that phrase one of the Phantom Song (measures 10 through 13 and repeats thereof) has eight melody notes and ten harmonic tones in common with measures 15 through 18 of Lloyd Webber's "Benjamin Calypso" song and measures 17 through 22 of Lloyd Webber's "Pilate's Dream" work.[7] In addition, measures

sures." Melody is the vocal part of a song, comprised of a number of musical notes each of which is separated by specific intervals. The rhythm of a song is determined by the time value of notes and silences, as well as accentuation, grouping of notes and contour. The harmony of

10 and 12 of the Phantom Song, 15 and 17 of "Benjamin Calypso" and 17 and 20 of "Pilate's Dream" all contain an interval of a perfect fourth.[8] Furthermore, three out of four melody notes are identical between phrase two of the Phantom Song (measures 18 through 22 and repeats thereof), measures 17 and 18 of "Benjamin Calypso" and measures 20 and 22 of "Pilate's Dream."

Second, Prof. Ferrara contends that there are similarities between the Phantom Song and Lloyd Webber's "Close Every Door" and "Heaven On Their Minds" songs. Specifically, there are five consecutive notes identical in pitch content between measures 18 and 19 of the Phantom Song and measures nine through ten of "Close Every Door." The harmony accompanying these five notes is identical. In addition, there are five melody notes in measures two and three of the coda of "Heaven On Their Minds" that are common in pitch content to measures 18 and 19 of the Phantom Song. The harmony accompanying these five notes is also identical.

Finally, Prof. Ferrara notes that Webber uses an interval of a "perfect fourth" as his signature in several of his melodies. Specifically, Prof. Ferrara demonstrates that an ascending then descending perfect-fourth melodic interval is located in each of the following Webber songs:[9] (1) measures five and six of the "Song Of The King," copyrighted in 1975; (2) measures four and five of "And The Money Kept Rolling In (And Out)," copyrighted in 1977; (3) measure 48 of "Don't Cry For Me Argentina," copyrighted in 1977; (4) measure five of "Gus: The Theatre Cat," copyrighted in 1981; (5) measures 19 and 20 of "Memory," copyrighted in 1981; (6) measures 52 through 53 of "Overture," copyrighted in 1981; (7) measure one of "Engine of Love," copyrighted in 1984 and 1987; and (8) measure eight of "Parlez–Vous Fran-

cais," copyrighted in 1989. Based on this evidence, Prof. Ferrara concludes that the Phantom Song was derived from Lloyd Webber's earlier works, and not from Repp's "Till You" song.

### 2. Musical Similarities Between the Phantom Song and Public Domain Literature

Prof. Ferrara also contends that there are numerous works in existing public domain literature that contain melodic phrases as similar to the Phantom Song as the Phantom Song is similar to "Till You." Specifically, Prof. Ferrara states that there are five consecutive melody notes common in pitch content between measures ten and 11 of the Phantom Song, measures 12 and 13 of J.S. Bach's "Praludium" and measures 14 and 15 of Edvard Grieg's "Melodie."[10]

In addition there are six consecutive melody notes common in pitch content between measures ten and 11 of the Phantom Song and several measures of the following musical compositions: (1) measures three and four of the Cantorial Chant: "Sh'ma Yisroayl;" (2) measures 25 and 26 of Edvard Holst's "Glittering Sunbeams;" and (3) measures 11 and 12 of G.B. Allen's "None Can Tell." According to Prof. Ferrara, the melodic phrase that appears in phrase one of the Phantom Song is thus a commonplace musical idea and not unique.

### B. Professor Hitchcock's Report

Plaintiffs' expert, Prof. H. Wiley Hitchcock ("Hitchcock"), professor of music at the City University of New York, disputes Prof. Ferrara's findings, contending that Prof. Ferrara uses a flawed and misleading methodology of changing and then isolating three-to-six note fragments of the published music at issue to reach his conclusions. Prof. Hitchcock contends further that (1) "Till You" and the

---

a song is the relationship of tones, *i.e.*, the essence of how one chord (consisting of three or more notes sounded simultaneously) relates to the next, and how the chords progress from the first chord in a phrase of music to the last. *See* Ferrara Aff. at ¶¶ 12, 13.

8. Unlike the Phantom Song, however, the first three melody notes of measures one and three of "Till You" move up and down an interval of a minor sixth.

9. As plaintiffs emphasize, however, these examples illustrate merely eight instances of the use of a perfect-fourth interval sequence out of more than 150 Lloyd Webber compositions.

10. Plaintiffs argue, however, that an aural examination of the public domain music cited by the defendants reveals that this music sounds nothing like either "Till You" or the Phantom Song.

Phantom Song are strikingly similar; (2) "Till You" is not similar to Lloyd Webber's "Close Every Door" song; and (3) "Till You" is not similar to "Heaven on Their Minds" and "Benjamin Calypso." [11]

In support of his contention that "Till You" and the Phantom Song are strikingly similar, Prof. Hitchcock points to the fact that (1) the basic rhythmic and metrical character of "Till You" and the Phantom Song are identical; (2) the rhythmic aspects of the melodic phrases in "Till You" are echoed in the Phantom Song; and (3) although the two pieces differ in harmony, key and mode, they are identical in harmonic rhythm. Based on this evidence, Prof. Hitchcock concludes that "Till You" and the Phantom Song share significant similarities in every musical element and in the interaction of these musical elements.

## V. Musical Similarities Between Prior Webber Songs and Other Works

Plaintiffs contend further that Lloyd Webber has a history of copying from other pieces when composing his musical works. In support of this contention, plaintiffs point to the fact that Lloyd Webber's song "I Don't Know How To Love Him," written for the musical *Jesus Christ Superstar,* is copied from the slow movement of Mendelssohn's violin concerto. Plaintiffs also contend that Lloyd Webber copied his song "1969" from Beethoven's "Fur Elise." According to the plaintiffs, Lloyd Webber also borrowed from the music of Paganini when he composed his "Variations." In addition, Lloyd Webber's song "Memory," from the musical *Cats,* bears a remarkable similarity to Larry Clinton's 1942 music "Bolero In Blue." [12]

## DISCUSSION

### I. Standard for Summary Judgment

■ Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for sum-

mary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must initially satisfy a burden of demonstrating the absence of a genuine issue of material fact, which can be done merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). The nonmoving party then must meet a burden of coming forward with "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552.

The Court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." *Eastway Constr. Corp. v. New York,* 762 F.2d 243, 249 (2d Cir.1985); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–10, 26 L.Ed.2d 142 (1970); *Hathaway v. Coughlin,* 841 F.2d 48, 50 (2d Cir.1988); *Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). But the Court is to inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for the party," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and to grant summary judgment where the nonmovant's evidence is

---

11. As the defendants' motion for summary judgment is not based on any alleged similarities between "Till You" and either "Close Every Door," "Heaven on Their Minds" or "Benjamin Calypso," however, the Court finds that Prof. Hitchcock's second and third conclusions are irrelevant for the purposes of this Opinion.

12. In response, defendants contend that Mendelssohn's "Violin Concerto," Paganini's "A Minor Caprice" and Beethoven's "Fur Elise" were

in the public domain long before Lloyd Webber's works were created. With respect to Clinton's "Bolero In Blue," defendants contend that there is no evidence that (1) Lloyd Webber had access to Clinton's work prior to composing "Memories;" (2) "Bolero In Blue" is a protected work; or (3) Clinton or anyone on his behalf ever asserted a claim that Lloyd Webber's "Memories" infringes "Bolero In Blue."

merely colorable, conclusory, speculative or not significantly probative. *Id.* at 249–50, 106 S.Ct. at 2510–11; *Knight v. United States Fire Ins. Co.,* 804 F.2d at 12, 15; *Argus Inc. v. Eastman Kodak Co.,* 801 F.2d 38, 45 (2d Cir.1986), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987).

■ To determine whether the nonmoving party has met his or her burden, the Court must focus on both the materiality and the genuineness of the factual issues raised by the nonmovant. As to materiality, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510. A dispute over irrelevant or unnecessary facts will not preclude summary judgment, *id.,* but the presence of unresolved factual issues that are material to the outcome of the litigation mandates a denial of the summary judgment motion. *See, e.g., Knight v. United States Fire Ins. Co.,* 804 F.2d at 11–12.

■ Once the nonmoving party has successfully met the burden of establishing the existence of a genuine dispute as to an issue of material fact, summary judgment must be denied unless the moving party comes forward with additional evidence sufficient to satisfy his or her ultimate burden under Rule 56. *See Celotex Corp. v. Catrett,* 477 U.S. at 330, n. 2, 106 S.Ct. at 2556, n. 2 (Brennan, J., dissenting). In sum, if the Court determines that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1969)); *see also Weg v. Macchiarola,* 654 F.Supp. 1189, 1191–92 (S.D.N.Y.1987). In copyright infringement cases, courts have regularly granted summary judgment where it is clear that the plaintiff cannot make out the elements of the

claim. *See Siskind v. Newton–John,* 84 Civ. 2634, 1987 WL 11701, at *4, 1987 U.S.Dist. LEXIS 4084, at *11 (S.D.N.Y. May 22, 1987).[13]

## II. Copyright Infringement

■ In order to prove copyright infringement, plaintiffs must show ownership of a valid copyright and unauthorized copying by the defendants. *See Laureyssens v. Idea Group, Inc.,* 964 F.2d 131, 139 (2d Cir.1992); *Rogers v. Koons,* 960 F.2d 301, 306 (2d Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992); *Folio Impressions, Inc. v. Byer California,* 937 F.2d 759, 763 (2d Cir.1991). Defendants do not contest that plaintiffs own a valid copyright in the "Till You" song. Accordingly, the Court must consider whether a reasonable jury could conclude that Lloyd Webber copied the "Till You" song in composing the Phantom Song.

■ A *prima facie* case of copying is established from a showing that a defendant had access to the copyrighted work and that substantial similarities exist between the original work and the infringing work. *Laureyssens v. Idea Group, Inc.,* 964 F.2d at 139; *Folio Impressions, Inc. v. Byer California,* 937 F.2d at 765. A defendant can then rebut this inference of copying "by showing that its product was independently created despite its similarity to the plaintiff's work." *Gund, Inc. v. Russ Berrie and Co.,* 701 F.Supp. 1013, 1018 (S.D.N.Y.1988); *see also Novak v. National Broadcasting Co.,* 752 F.Supp. 164, 168 (S.D.N.Y.1990) (stating that an inference of copying may be rebutted by showing that the work was independently created, either without reference to the plaintiff's work, or by copying a work already in the public domain).

Once copying is established, the plaintiff must show that the copying amounts to an improper appropriation "by demonstrating that substantial similarities relate to protecti-

---

**13.** While the Second Circuit historically held that a grant of summary judgment is improper whenever there is the slightest doubt as to the facts, *see Arnstein v. Porter,* 154 F.2d 464, 468 (2d Cir.1946), this holding is no longer good law. *See Heyman v. Commerce and Indus. Ins. Co.,* 524

F.2d 1317, 1319 (2d Cir.1975). Rather, "once the moving party has properly supported his summary judgment motion, the nonmoving party must rebut with 'significant probative' evidence." *Ferguson v. National Broadcasting Co.,* 584 F.2d 111, 114 (5th Cir.1978).

ble material." *Laureyssens v. Idea Group, Inc.,* 964 F.2d at 140. In determining whether the infringed work has been unlawfully appropriated, the Court must consider whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard the aesthetic appeal of the two works as the same." *McDonald v. Multimedia Entertainment, Inc.,* 90 Civ. 6356, 1991 WL 311921, at *2, 1991 U.S.Dist. LEXIS 10649, at *6 (S.D.N.Y. July 19, 1991).

### A. Evidence of Access

Defendants contend that plaintiffs cannot prove that Lloyd Webber had access to Repp's "Till You" song prior to composing the Phantom Song. The Court agrees.

■ Access is defined as "'[h]earing or having a reasonable opportunity to hear the plaintiff's work, in other words having the opportunity to copy.'" *Sylvestre v. Oswald,* 91 Civ. 5060, 1993 WL 179101, at *3, 1993 U.S.Dist. LEXIS 7002, at *7 (S.D.N.Y. May 18, 1993) (quoting *Intersong–USA v. CBS, Inc.,* 757 F.Supp. 274, 281 (S.D.N.Y.1991)). "Generally, in order to show access plaintiffs must demonstrate more than a 'bare possibility' that defendant had access to the work; access must be shown to a 'reasonable possibility.'" *Id.; see also Ferguson v. National Broadcasting Co.,* 584 F.2d at 113; *Siskind v. Newton–John,* 1987 WL 11701, at *4, 1987 U.S.Dist. LEXIS 4084, at *11. In addition, a reasonable possibility of access may not be inferred through speculation or conjecture, *see Gaste v. Kaiserman,* 863 F.2d 1061, 1066 (2d Cir.1988); *Sylvestre v. Oswald,* 1993 WL 179101, at *3, 1993 U.S.Dist. LEXIS 7002, at *7, but must be established by probative evidence. *See Scott v. Paramount Pictures Corp.,* 449 F.Supp. 518, 520 (D.D.C.1978) (finding speculations and inferences as to access were insufficient to meet defendants' summary judgment challenge), *aff'd,* 607 F.2d 494 (D.C.Cir.1979), *cert. denied,* 449 U.S. 849, 101 S.Ct. 137, 66 L.Ed.2d 60 (1980).

■ A plaintiff can satisfy his or her burden of proving access by demonstrating either that (1) the infringed work has been widely disseminated; or (2) a particular chain of events exists by which the alleged infring-

er might have gained access to the copyrighted work. *Sylvestre v. Oswald,* 1993 WL 179101, at *3, 1993 U.S.Dist. LEXIS 7002, at *8. Lloyd Webber has categorically denied ever having heard of Repp or his music prior to this litigation. While plaintiffs have no direct evidence that Lloyd Webber heard "Till You" prior to composing the Phantom Song, they contend that access can be inferred from the fact that Repp's music was given to Velline, a mutual friend of Repp and Julian Lloyd Webber. Alternatively, plaintiffs argue that access can be inferred from the wide dissemination of the "Till You" song to the public.

■ First, plaintiffs argue that access can be inferred from the fact that a cassette recording of Repp's music was given to Velline, who was also a friend of Julian Lloyd Webber and an acquaintance of Lloyd Webber. While courts have often found access when an alleged infringer and an intermediary occupy positions "such that it is natural that information possessed by one would be imparted to the other," *see Meta–Film Assocs., Inc. v. MCA, Inc.,* 586 F.Supp. 1346, 1356 (C.D.Cal.1984), a finding of access here is not supported by the evidence. In fact, Velline cannot recall whether the cassette tape of Repp's music in his possession included the "Till You" song. In addition, Velline testified that he did not meet either of the Lloyd Webbers prior to 1983, when Lloyd Webber alleges that he composed the melody for the Phantom Song, and had only met Lloyd Webber on one occasion. Finally, Velline testified that he did not discuss or distribute Repp's music to either of the Lloyd Webbers. Accordingly, the Court finds that any nexus that exists between Velline and Lloyd Webber is insufficient to justify an inference of access on this basis.

■ Second, plaintiffs contend that access can be inferred from the wide distribution of the "Till You" song. The Second Circuit has recognized that a plaintiff may establish access by proving that there has been "wide dissemination" of the copyrighted work. *ABKCO Music, Inc. v. Harrisongs Music, Ltd.,* 722 F.2d 988, 998 (2d Cir.1983) (finding access where plaintiff's song was "Number

One" on the United States Billboard Charts and one of the "Top Thirty Hits" in England). Where the copyrighted work has only been published to a limited audience, however, access cannot be inferred absent evidence that the defendants had a reasonable opportunity to view the work. *See Intersong–USA v. CBS, Inc.,* 757 F.Supp. at 281 (dismissing plaintiffs' claim of radio access where there was no proof that the defendants' songwriters heard the song); *Novak v. National Broadcasting Co.,* 752 F.Supp. at 170 (no genuine issue of fact regarding access despite fact that plaintiff's skits were broadcast several times on a national television show); *Jewel Music Pub. Co. v. Leo Feist, Inc.,* 62 F.Supp. 596, 598 (S.D.N.Y.1945) (finding no access to plaintiff's song despite fact that 4,000 copies were distributed to various broadcasting stations and artists, and 5,626 copies, 168 orchestrations and 198 band arrangements were sold); *see also Benson v. Coca–Cola Co.,* 795 F.2d 973, 975 (11th Cir. 1986) (finding fact that plaintiff had performed his song around the country did not establish access where no evidence that defendant's songwriters visited any of the places of performance during the relevant time period); *Selle v. Gibb,* 741 F.2d 896, 902 (7th Cir.1984) (finding no more than a bare possibility that defendants had access to the plaintiff's song where song had been performed two or three times in the Chicago area and sent to eleven publishing companies); *Jason v. Fonda,* 526 F.Supp. 774, 776–77 (C.D.Cal.1981) (fact that 200 to 700 copies of plaintiff's book were available in Southern California bookstores "creates no more than a 'bare possibility' that defendants may have had access to plaintiff's book"), *aff'd,* 698 F.2d 966 (9th Cir.1982).

■ In the case at hand, plaintiffs point to the more than 38,000 copies of the "Till You" song that they allege were distributed in album, cassette tape and sheet music form in support of their contention that "Till You" was widely disseminated. Plaintiffs have no documentary proof, however, of the number of copies of the "Till You" song that were actually distributed to the public during the relevant time period. Instead, plaintiffs merely contend that Repp personally ordered copies of the "Till You" recording from various manufacturers and that these copies are no longer in his possession. Such evidence does not prove that the "Till You" song was disseminated to the general public during the relevant time period. Rather, the copies could have been disseminated, if at all, after Lloyd Webber composed the Phantom Song.

■ In addition, plaintiffs point to the testimony of Repp's employees that "thousands" of recordings of the *Benedicamus* album were distributed. This testimony does not prove wide dissemination of the "Till You" song, however, as it does not specify quantity, time and place of distribution. Plaintiffs' evidence that 100 recordings of the "Till You" song were shipped to a distributor in Australia similarly lacks details as to time and place of distribution. In any event, Lloyd Webber did not travel to Australia until August 1985, one month after the Phantom Song was performed at his Sydmonton home. Accordingly, the Court finds that plaintiffs' evidence of "wide dissemination" does not rise above the level of pure speculation.

■ Plaintiffs next argue that Repp's music was widely advertised, as K & R distributed a tabloid newspaper advertising Repp's work to more than 300,000 people between 1978 and 1985, including public libraries, and sent out mailings to retail stores. Aside from failing to submit any evidence in support of this allegation, however, the Court finds that the fact that K & R may have distributed newspapers and mailings advertising Repp's music does not establish that the "Till You" song was advertised as a distinct musical composition.

■ Plaintiffs' remaining proof of access consists of evidence that the "Till You" song was advertised and performed in a specialized religious market. Specifically, plaintiffs contend that (1) Repp performed the "Till You" song at convention centers, churches, universities and theaters; (2) the *Benedicamus* recording was released at three religious conventions; (3) the *Benedicamus* album was advertised in newspapers handed out at catholic churches across the United States; and (4) the *Benedicamus* album was

frequently broadcast on a catholic college radio station. As Lloyd Webber composes liturgical works, among others, plaintiffs argue that he could have had the opportunity to hear the "Till You" song prior to composing the Phantom Song. The Court finds, however, that the mere fact that Lloyd Webber composes liturgical works and is "fond of church music," *see* the Webber Dep. at 67–68, 259, does not establish either that he visited any of the places at which Repp's "Till You" song was performed, or had access to the *Benedicamus* recording during the relevant time period. Accordingly, as plaintiffs have failed to submit any evidence that Lloyd Webber had a reasonable opportunity to hear the "Till You" song prior to composing the Phantom Song, the Court finds that plaintiffs have failed to establish the access element of their copyright infringement claim.

**B. Substantial Similarity**

■ Plaintiffs next contend that the "Till You" song is so "strikingly similar" to the Phantom Song as to preclude the possibility of independent creation, and that, therefore, access to "Till You" can be inferred as a matter of law. "In some cases, the similarities between the plaintiff's and defendant's work are so extensive and striking as, without more, both to justify an inference of copying and to prove improper appropriation." *Arnstein v. Porter*, 154 F.2d at 468–69. Accordingly, where the copyrighted work and the infringing work are "strikingly similar," the test for proof of access is less rigorous. *See Gaste v. Kaiserman*, 863 F.2d at 1067. However, the "striking similarity between pieces of popular music must extend beyond themes that could have been derived from a common source or themes that are so trite as to be likely to reappear in many compositions," *Id.* at 1068–69. Thus, striking similarity "is not merely a function of the number of identical notes that appear in both compositions," *Selle v. Gibb*, 741 F.2d at 903, but also of the uniqueness of the sections which are asserted to be similar. *Id.* at 904. "To prove that similarities are striking, claimant must demonstrate that such similarities are of a kind that can only be explained by copying, rather than by coincidence, independent creation, or prior common source." *Stratchborneo v. Arc Music Corp.*, 357 F.Supp. 1393, 1403 (S.D.N.Y.1973).

■ Upon aural examination of the two songs and consideration of the expert testimony submitted by both parties, the Court finds that any similarities that exist between the two works are not so extensive as to support an inference of copying and improper appropriation without more. While the two melodies share several common notes, the songs differ in tempo and style. In addition, plaintiffs' expert, Prof. Hitchcock, concedes that the two pieces differ in harmony, key and mode. Under the circumstances, the Court finds that the two songs do not share a striking similarity sufficient to justify a finding of copying in the absence of access to the copyrighted work.[14]

**C. Independent Creation**

■ A defendant can "rebut the inference of copying by showing that its product was independently created despite its similarity to plaintiff's work." *Gund, Inc. v. Applause, Inc.*, 809 F.Supp. 304, 308 (S.D.N.Y.1993); *see also Intersong–USA v. CBS, Inc.*, 757 F.Supp. at 282 ("defendants could rebut an inference of copying by proving that the work was created independently of the plaintiff's work"); *Novak v. National Broadcasting Co.*, 752 F.Supp. at 170. In the instant case, even if plaintiffs could prove access and substantial similarity, they have not submitted any evidence to controvert the defendants' proof of independent creation.

Defendants have submitted declarations from Lloyd Webber and Brightman detailing the circumstances surrounding the creation of the Phantom Song. Specifically, Lloyd Webber states that he created the Phantom

---

14. As the Court finds that plaintiffs have not set forth a *prima facie* case of copying, it need not address whether a reasonable jury could conclude that the defendants unlawfully appropriated plaintiffs' work. The Court notes, however, that, as unlawful appropriation is judged by the response of the ordinary lay observer, *see McDonald v. Multimedia Entertainment, Inc.*, 1991 WL 311921, at *2, 1991 U.S.Dist. LEXIS 10649, at *6, defendants' expert testimony on this issue is inadmissible. *Id.* (stating that consideration of expert testimony on this issue is improper).

Song at his Sydmonton home in late 1983, in order to showcase Brightman's vocal talents. Tapes of the Phantom melody were sent to an English director and lyricist in 1984. In October 1984, a demonstration tape of the Phantom Song was recorded, and in July 1985, the Phantom Song was performed as part of the first act of a musical play.

■ Plaintiffs have not submitted any evidence to contradict defendants' proof that the Phantom Song was created in the manner detailed above. Instead, they argue that Lloyd Webber's prior history of copying from other composers rebuts his claim of independent creation. Specifically, plaintiffs submitted evidence that Lloyd Webber (1) copied "I Don't Know How To Love Him" from the slow movement of Mendelssohn's violin concerto; (2) copied his song "1969" from Beethoven's "Fur Elise;" (3) borrowed from the music of Paganini when he composed his "Variations;" and (4) copied from Larry Clinton's "Bolero In Blue" when he composed the song "Memory." Even assuming such evidence is admissible under Fed. R.Evid. 404(b), however, the Court finds that plaintiffs have not disproved Lloyd Webber's allegations of independent creation, as their evidence does not point to any prior findings of copyright infringement. *Compare Pret-A-Printee, Ltd. v. Allton Knitting Mills, Inc.*, 1981–1982 Copy.L.Rep. (CCH) ¶ 25,447, 1982 WL 1788 (S.D.N.Y. Sept. 16, 1982) (finding that defendants' past record of copyright infringement indicates a practice of copying despite claims of independent creation).

■ Plaintiffs' remaining argument is that Lloyd Webber and Brightman are interested parties, and that their allegations of independent creation are therefore incredible. Nonetheless, mere hope that a factfinder will disbelieve the testimony of witnesses on the issues of access and independent development is not sufficient to defeat a motion for summary judgment. *See Vantage Point, Inc. v. Parker Bros., Inc.*, 529 F.Supp.

1204, 1213 (E.D.N.Y.1981), *aff'd*, 697 F.2d 301 (2d Cir.1982); *see also Modern Home Inst., Inc. v. Hartford Accident and Indem. Co.*, 513 F.2d 102, 110 (2d Cir.1975) ("If the most that can be hoped for is the discrediting of defendants' denials at trial, no question of material fact is presented."). Accordingly, the Court finds that the defendants' uncontradicted evidence of independent creation negates any claim of infringement.[15] *See Novak v. National Broadcasting Co.*, 752 F.Supp. at 171.

## II. State Law Claims

■ As plaintiffs' federal claims for copyright infringement fail, there is no further basis for federal jurisdiction. In addition, as plaintiffs and several of the defendants are residents of New York, complete diversity of citizenship is lacking. *See* 28 U.S.C. § 1332. Accordingly, plaintiffs' state claims of unfair competition and deceptive trade practices under Ill.Rev.Stats., ch. 121½, ¶¶ 261–272, and 311–317 are dismissed for lack of subject matter jurisdiction. *See DBC of New York, Inc. v. Merit Diamond Corp.*, 768 F.Supp. 414, 418 (S.D.N.Y.1991) (dismissing unfair competition claim for lack of subject matter jurisdiction following court's dismissal of federal claims); *Howe v. Reader's Digest Ass'n*, 686 F.Supp. 461, 467 (S.D.N.Y.1988) (dismissing pendent state law claims for lack of jurisdiction after granting summary judgment dismissing plaintiff's federal claims).

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted, and the complaint is dismissed. The parties shall appear before the Court for a pretrial conference with respect to defendants' counterclaims on Wednesday, October 12, 1994, at 10:30 a.m.

SO ORDERED.

---

**15.** Defendants have also submitted expert testimony indicating that the Phantom Song was derived from Lloyd Webber's earlier works rather than from the "Till You" song. While such evidence is relevant to the issue of whether the two works are more likely due to copying or independent creation, *see McDonald v. Multimedia Entertainment, Inc.*, 1991 WL 311921, at *1, 1991 U.S.Dist. LEXIS 10649, at *5, the Court finds that defendants' expert evidence in this case does not conclusively rebut an inference of copying as a matter of law.